UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MARIE JACQUES,                                      MEMORANDUM AND ORDER

        Plaintiff,                                  CV 10-3076

    -against-                                      (Wexler, J.)

ADELPHI UNIVERSITY, DR. DARYLANN
FICKEN, and DR. PATRICK COONAN,

        Defendants.
------------------------------------------------------------X

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ DEC 19 2011 ★
LONG ISLAND OFFICE

APPEARANCES:

    BELL & KILADA PLLC
    BY: JOSEPH F. KILADA, ESQ.
    666 Old Country Road, Suite 600
    Garden City, New York 11530
    Attorneys for Plaintiff

    SPELLMAN RICE SCHURE GIBBONS
    McDONOUGH POLIZZI & TRUNCALES, LLP
    BY: KEVIN P. McDONOUGH, ESQ.
    229 Seventh Street, Suite 100
    P.O. Box 7775
    Garden City, New York 11530-7775
    Attorneys for Defendants

WEXLER, District Judge

    Plaintiff Marie Jacques ("Plaintiff"), a former student at Adelphi University, ("Adelphi" or the "University") claims racial discrimination in connection with her dismissal from the University's Master of Science Adult Nurse Practitioner program (the "Program"). Plaintiff asserts federal causes of action pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. §2000d ("Title VI") and 42 U.S.C. §1981 ("Section 1981"). Named as Defendants are the University, Dr. Darylann Ficken ("Dr. Ficken") and Dr. Patrick Coonan ("Dr. Coonan"). Dr. Ficken was a professor who taught Plaintiff's "Adult Health Nursing II" class (the "Class"). Dr.

1

Coonan is the Dean of the Adelphi School of Nursing. Presently before the court is Defendants' motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment.

## BACKGROUND

### I. The Parties and the Allegations of the Complaint

Plaintiff is a female of Haitian descent who was enrolled in the Program until her 2009 dismissal. She contends that her dismissal, which followed her grade of C+ in the Class, was motivated by Defendants' racially discriminatory animus. As more specifically discussed below, Plaintiff, along with proffered witnesses who have submitted affidavits in opposition to the present motion, states that Dr. Ficken taught in a racially segregated room, and that a similarly situated lighter skinned individual who also failed the Class was allowed to remain in the Program. Plaintiff relies on these facts, as discussed below, in support of the claims that Defendants have violated both Title VI and Section 1981. Although Plaintiff is currently completing her Master's degree at a different institution, she seek damages in the form of lost tuition, wages, and emotional injury attributable to Defendants' conduct.

### II. The Motion for Summary Judgment

Defendants move for summary judgment dismissing the complaint in its entirety. In support of the motion, Defendants assert a racially neutral explanation for Plaintiff's dismissal. In response, Plaintiff asserts that the racially neutral reason set forth by Defendants is nothing more than a pretext for discrimination. After setting forth applicable legal principles, the court will turn to the merits of the motion.

## DISCUSSION

I. <u>Legal Principles</u>

   A. <u>General Summary Judgment Standards</u>

The standards for summary judgment are well settled. Rule 56(c) of the Federal Rules of Civil Procedure 56(c), states that summary judgment is appropriate only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>Reiseck v. Universal Commc'ns of Miami, Inc.</u>, 591 F.3d 101, 104 (2d Cir. 2010). The moving party bears the burden of showing entitlement to summary judgment. See <u>Huminski v. Corsones</u>, 396 F.3d 53, 69 (2d Cir. 2005). In the context of a Rule 56 motion, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." <u>Amnesty Am. v. Town of W. Hartford</u>, 361 F.3d 113, 122 (2d Cir. 2004); see <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

The issue is "not whether ... the evidence unmistakably favors ones side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." <u>Id</u>. "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." <u>Jeffreys v. City of New York</u>, 426 F.3d 549, 553 (2d Cir. 2005)(citations omitted). Nonetheless, the party opposing the motion " 'must do more than simply show that there is some metaphysical doubt as to the material facts .... [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.' " <u>Caldarola v. Calabrese</u>, 298 F.3d 156, 160 (2d Cir. 2002), quoting, <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986) (emphasis in original).

3

As the Supreme Court stated in Anderson, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). "[T]he mere existence of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. Id. at 247-48 (emphasis in original). The nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "concrete particulars" showing that a trial is needed. R.G. Group, Inc. v. Horn & Hardart Co., 751 F.2d 69, 77 (2d Cir. 1984), quoting, SEC v. Research Automation Corp., 585 F.2d 31, 33 (2d Cir.1978). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." BellSouth Telecomms., Inc. v. W.R. Grace & Co., 77 F.3d 603, 615 (2d Cir. 1996), quoting, Research Automation Corp., 585 F.2d at 33.

B.  Summary Judgment in Title VI and Section 1981 Discrimination Cases

Title VI prohibits racial discrimination in connection with participation in "any program or activity receiving Federal financial assistance." 42 U.S.C. §2000d; see New York State Ass'n for Retarded Children, Inc. v. Carey, 612 F.2d 644, 649 (2d Cir. 1979); Lopez v. Webster Central School Dist., 682 F. Supp.2d 274, 277 (W.D.N.Y. 2010). To state a claim under Title VI, a plaintiff must show intentional discrimination, and that the discrimination was a "substantial" or "motivating factor" for the defendant's actions. Id. (citations omitted); Koumantaros v. City University of New York, 2007 WL 840115 *7 (S.D.N.Y. 2007). Such intentional discrimination is also necessary to state a claim pursuant to Section 1981. See Brown v. City of Oneonta, New York, 221 F.3d 329, 339 (2d Cir. 2000).

When deciding motions for summary judgment in racial discrimination cases such as that presented here, courts apply the familiar burden-shifting analysis set forth in McDonnell Douglas

4

Corp. v. Green, 411 U.S. 792 (1973). E.g., Lopez, 682 F. Supp.2d at 279 (applying McDonnell Douglas in Title VI case); Koumantaros, 2007 WL 840115 *7 (same); Pacheco v. New York Presbyterian Hosp., 593 F. Supp.2d 599, 214 (S.D.N.Y. 2009) (applying McDonnell Douglas in Section 1981 case). Pursuant to that analysis, the plaintiff bears the initial burden of showing a prima facie case of discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); see Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252–53 (1981); Kanhoye v. Altana Inc., 686 F. Supp.2d 199, 206-07 (E.D.N.Y. 2009).

To establish a prima facie case of Title VI discrimination in an education program Plaintiff must show that: (1) she is a member of a protected class; (2) she suffered an adverse action in pursuit of her education by defendant; (3) she was treated differently from similarly situated students who are not members of the protected class; and (4) she was qualified to continue in her educational pursuit. Koumantaros, 2007 WL 840115 *8. With respect to her Section 1981 claim, Plaintiff must establish: (1) her membership in a protected class; (2) discrimination in connection with an activity under Section 1981, and (3) an intent to discriminate based upon race. Brown, 221 F.3d at 339. Those activities covered by Section 1981 include enrollment in a university such as Adelphi. See Tripp v. Long Island University, 48 F. Supp.2d 220, 224 (E.D.N.Y. 1999) (Section 1981 provides cause of action against university charged with discriminatory conduct against student).

Plaintiff's establishment of a prima facie case creates a presumption of discrimination. The defendant thereafter bears the burden of rebutting the presumption by articulating a legitimate, non-discriminatory reason for its action. Burdine, 450 U.S. 254-55; Robins, 2010 WL 2507047 at *6. If the defendant articulates such a reason, the McDonnell Douglas burden-shifting framework drops out of the picture, and the plaintiff must show that the adverse

employment decision was a mere pretext for discrimination, and that the defendant's action was, more likely than not, motivated in whole or part by discriminatory reasons. See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142–43 (2000). At that point, the evidence establishing plaintiff's prima facie case may still be considered along with all inferences properly drawn therefrom. See Reeves, 530 U.S. at 143.

II. The Motion

In accord with the principles set forth above, the court first considers whether Plaintiff has come forward with sufficient evidence to establish her prima facie case of discriminatory treatment. In the context of this summary judgment motion, when considering whether Plaintiff has come forward with the necessary facts to sustain her claim, the court considers documents properly before the court as well as the deposition testimony submitted.

A. The Facts

As noted, Plaintiff was a student in the Program at Adelphi. The published rules of the Program state that any student who receives a course grade below B- is subject to dismissal. This rule does not take into account a student's overall grade point average. Instead, a single grade that is below B- renders a graduate student subject to dismissal.

In the Fall of 2008, Plaintiff was enrolled in the Class. Plaintiff received a final grade of C+, which, under the University graduate school rules, subjected Plaintiff to dismissal from the Program. The C+ grade in Dr. Ficken's class was based upon Plaintiff's performance on three multiple choice examinations, as well as her class participation. Plaintiff failed all three of the multiple choice examinations, which comprised 75% of her grade. Dr. Ficken had a policy which allowed students to obtain extra credit during the course of the year by submitting multiple choice questions at the end of each lecture. While Plaintiff testified that she participated in this

extra credit option, Dr. Ficken testified that neither Plaintiff nor any other student took advantage of that policy.

After receipt of the failing grade and in an effort to remain in the program, Plaintiff began the University's appeal process. The first level of that process was review of the grade by Dr. White. Dr. White declined to take any action with respect to the grade, and Plaintiff made a final appeal to avoid dismissal to Dr. Coonan. Dr. Coonan denied the request to interfere with the grade and Plaintiff was dismissed from the Program.

Plaintiff was one of eleven students in Dr. Ficken's class. Two of those students, like Plaintiff, were of Haitian descent.[1] Both of those students passed the class. Plaintiff argues, and Defendants do not dispute, that students in Dr. Ficken's class tended to take seats along racial lines. Thus, while there was no mandated seating, Dr. Ficken did not dispute that darker skinned students sat on one side of the room, while lighter skinned students sat on the other side of the room. Dr. Ficken took no steps to change this seating pattern.

In addition to Plaintiff, there was one other student in Dr. Ficken's class who received a failing grade of C+. That student has been identified as a male Hispanic student whose surname is Gonzalez. Plaintiff states that Gonzalez sat with the lighter skinned students. Unlike Plaintiff, Gonzalez was successful in the appeal process. He was allowed to repeat the failed class and was not dismissed from the program. Dr. White stated that the decision to allow Gonzalez to repeat the class was a decision that she made with the input of other professors who were familiar with Gonzalez's performance in class. Because Gonzalez's appeal was successful at the first level, his appeal never reached Dr. Coonan.

---

[1] The two Haitian students were males. Plaintiff makes no claim that she was discriminated against on account of her gender, but only on account of her race.

In addition to the facts above, which are gleaned from documents and deposition testimony, Plaintiff submits affidavits of three of her classmates – Birget Bunbury, Bineta Diop, and Ralph Edouard (respectively, the "Bunbury Affidavit," the Diop Affidavit" and the "Edouard Affidavit"). All three affiants state that they were "uncomfortable" in Dr. Ficken's class and that the class was segregated in the sense that white students sat on one side of the room and students of color sat on the other side. Mr. Gonzalez is identified as one of the students who sat on the white side of the classroom. The Diop Affidavit state that the "most obvious and unbelievable indication of discrimination" was the fact that Dr. Ficken pointed to answers during examinations to students on the white side of the classroom, but not to students on the other side. It is further stated that Dr. Ficken lectured mostly to the white side of the room. The Edouard Affidavit states similarly that Dr. Ficken pointed to answers on examinations of white students, and that it was "obvious" that Dr. Ficken was "giving non black students the correct answers to the examination." The Bunbury, Diop and Edouard Affidavits state that Plaintiff participated as much as any other student in the class. Finally, the Diop Affidavit states that Plaintiff seemed capable of working at the same level as her classmates.

B. <u>Disposition of the Motion</u>

The court holds first that Plaintiff has established the first two elements of her Title VI claim as set forth above. Thus, it is clear that Plaintiff has met the minimal burden of establishing: (1) that she is a member of a protected class, and (2) that her dismissal from the Program constitutes an adverse action in pursuit of her education. Plaintiff also establishes two elements of her Section 1981 claim, <u>i.e.</u>, her protected class status, and participation in an activity covered by Section 1981. What is less clear is whether Plaintiff meets the <u>prima facie</u> burden of establishing the other elements of her claims, <u>i.e.</u>, that she was treated differently from a similarly

8

situated student outside of her protected class, that Plaintiff was qualified to continue in her educational pursuit, and that there was an intent to discriminate based upon race.

The court holds that the reference to Gonzalez, the racially segregated classroom, and affidavit testimony are sufficient evidence to meet the minimal prima facie burden of showing that Plaintiff was qualified to continue in the Program and was treated less favorably than a similarly situated student under circumstances giving rise to an inference of discrimination. Having established her prima facie case, the burden shifts to Defendants to rebut the presumption of discrimination by articulating a legitimate, non-discriminatory reason for their action. Defendants more than satisfy this burden. It is without question that Plaintiff received failing grades on all three of her examinations, and that a failing grade subjected her to dismissal under the clear rules of the University's graduate program.

At this point, the McDonnell Douglas burden-shifting framework drops out of the picture, and it is for the Plaintiff to show that the University's decision to dismiss her from the Program was a mere pretext for discrimination, and that the dismissal was, more likely than not, motivated in whole or part by discriminatory reasons. At this point, the court may continue to consider the evidence that established Plaintiff's prima facie case.

The court is aware that education "is an individualized experience-like snowflakes, no two students are exactly identical." Koumantaros, 2007 WL 840115 *10. Defendants argue and the court agrees with the cited general principle that judicial restraint should be exercised when considering whether to interfere with the academic decisions of educational institutions. The cases relied upon in support of such a policy, however, were not decided in the context of determining whether the actions of an institution were racially motivated. Instead, those cases presented the issue of whether actions were taken in violation of due process rights, or were

9

otherwise arbitrary and capricious. See, e.g., Regents of University of Michigan v. Ewing, 474 U.S. 214, 225-26 (1985) (decision as to whether due process clause was violated by arbitrary action); Matter of Susan M. v. New York Law School, 557 N.Y.S.2d 297, 299-300 (1990) (state court Article 78 proceeding); Matter of Rafman v Brooklyn Coll. of City Univ. of New York, 623 N.Y.S.2d 281, 282 (2d Dep't. 1995) (same). Here, in contrast, the issue is not whether the institution acted in an arbitrary and capricious manner, but whether the challenged academic decision was substantially motivated by race. Koumantaros, 2007 WL 840115 *7; Maya v. Bronx Community College, 2011 WL 2732519 *3 (S.D.N.Y. 2011). Despite Defendants' explanation as to their conduct, which a jury could certainly accept, the court holds that a rational jury could also ultimately find that Plaintiff was subject to unlawful discrimination. Accordingly, the motion for summary judgment must be denied.

## CONCLUSION

For the foregoing reasons, the motion for summary judgment is denied. The Clerk of the Court is directed to terminate the motion appearing at docket number 32. Counsel are reminded that jury selection in this matter is scheduled for June 4, 2012 at 9:00 A.M.

SO ORDERED.

s/ Leonard D. Wexler

LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
December 19, 2011

10